UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| In Re:<br><br>JIT Industries, Inc.<br>Debtors, | Case No: 18-80892-CRJ11 |

## NOTICE OF WITHDRAWAL OF CLAIM FILED BY WELLS FARGO FINANCIAL LEASING, INC.

COMES NOW Wells Fargo Financial Leasing, Inc. and withdraws its claim pursuant to Federal Rules of Bankruptcy Procedure § 3006, filed in the JIT Industries, Inc.; Case No: 18-80892-CRJ11. Wells Fargo Financial Leasing, Inc. filed a Proof of Claim in April 2018 in the amount of $14,169.54.

The claim filed by Wells Fargo Financial Leasing, Inc. ("Wells Fargo") has not been objected to, no adversary proceeding has been filed against Wells Fargo, and Wells Fargo has not voted on a plan or otherwise participated significantly in the case.

This Notice serves as Wells Fargo Financial Leasing, Inc.'s withdraw of its proof of claim.

Respectfully submitted,

*Deanna Cords*

Deanna Cords
Loan Adjustor
Wells Fargo Financial Leasing, Inc.
MAC F0005-055
800 Walnut Street
Des Moines, IA 50309
Phone: (515) 557-4542
Facsimile: (877) 861-4390

**Fill in this information to identify the case:**

Debtor 1: JIT Industries, Inc.

Debtor 2: _____
(Spouse, if filing)

United States Bankruptcy Court for the: Northern District of Alabama

Case number: 18-80892

---

Official Form 410

# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

**1. Who is the current creditor?**
Wells Fargo Financial Leasing, Inc.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?
Wells Fargo Financial Leasing, Inc.
Name
800 Walnut Street MAC F0005-055
Number  Street
Des Moines     IA     50309
City           State   ZIP Code

Contact phone  800-247-0032
Contact email  _____

Where should payments to the creditor be sent? (if different)
Name _____
Number  Street _____
City   State   ZIP Code
Contact phone _____
Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
_ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) _____ Filed on ___/___/_____
                                                                      MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing? _____

---

Official Form 410                     Proof of Claim                            page 1

Case 18-80892-CRJ11   Doc 70   Filed 07/27/18   Entered 07/27/18 14:35:19   Desc Main
Document    Page 2 of 7

### Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**
☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __2__ __5__ __3__ __9__

**7. How much is the claim?** $ __14,169.54__. Does this amount include interest or other charges?
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as health care information.

Equipment Lease Agreement

**9. Is all or part of the claim secured?**
☑ No
☐ Yes. The claim is secured by a lien on property.

Nature of property:
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection: _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____
Amount of the claim that is secured: $_____
Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $ __3,901.74__

Annual Interest Rate (when case was filed) __8.88__ %
☑ Fixed
☐ Variable

**10. Is this claim based on a lease?**
☐ No
☑ Yes. Amount necessary to cure any default as of the date of the petition. $ __3,901.74__

**11. Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

Official Form 410     Proof of Claim     page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check all that apply:* | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  04/06/2018
                  MM / DD / YYYY

Signature: __Deanna Cords__    By: /s/ Deanna Cords

Print the name of the person who is completing and signing this claim:

Name: **Deanna Cords**
First name    Middle name    Last name

Title: **Loan Adjustor**

Company: **Wells Fargo Financial Leasing, Inc.**
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: _____
Number    Street

_____
City    State    ZIP Code

Contact phone _____    Email _____

Official Form 410    Proof of Claim    page 3

# Equipment Lease Agreement



*Wells Fargo Financial Leasing, Inc. | 800 Walnut, 4th floor | Des Moines, Iowa 50309 | Phone: 800-247-5083*

| Customer Information: | Supplier Information: |
|---|---|
| Customer's Full Legal Name ("You" and "Your"): <br> JIT INDUSTRIES, INC. | Supplier Name ("Supplier"): <br> DIGITAL PRINT SOLUTIONS INTL |
| Address: <br> 2201 US-31 | Address: <br> 113 Jetplex Circle |
| City/State/Zip Code: <br> Hartselle, AL 35640 | City/State/Zip Code: <br> Madison, AL 35758 |
| Telephone Number: 256-286-0006 | Federal Tax ID#: | County: MORGAN |

**Equipment Information:**
☐ See Attached Equipment Schedule

Equipment Location (if different than address shown above):

| Quantity | Equipment Make, Model & Serial Number | Quantity | Equipment Make, Model & Serial Number |
|---|---|---|---|
| 1 | LEXMARK MX811dme, Serial: 74635C6600FHD | | |
| 1 | LEXMARK MX811dme, Serial: 74635C6600FP8 | | |

**Term And Payment Information:** Initial Term: 60 months  Payment*: $312.57  (*plus applicable taxes)

Payment Period is "Monthly" unless otherwise noted here: ___  Security Deposit: $ ___  Documentation/Processing Fee: $75.00

Advance Payment: $ ___ applied to: ☐ 1st Payment  ☐ Last Payment  ☐ 1st and Last Payments

Purchase Option (shall be Fair Market Value unless another option is checked): ☐ Fair Market Value  ☒ $1.00  ☐ Other: ___

You acknowledge and agree that this agreement (as amended from time to time, the "Lease") represents the complete and exclusive agreement between You and Us regarding the subject matter herein and supersedes any other oral or written agreements between You and Us regarding such matters. This Lease can be changed only by a written agreement between You and Us. Other agreements not stated herein (including, without limitation, those contained in any purchase order or service agreement between You and the Supplier) are not part of this Lease. To help the government fight the funding of terrorism and money laundering activities, U.S. Federal law requires financial institutions to obtain, verify and record information that identifies each person (individuals or businesses) who opens an account. What this means for You: When You open an account or add any additional service, We will ask You for Your name, address, federal employer identification number and other information that will allow Us to identify You. We may also ask to see other identifying documents.

1. **LEASE OF EQUIPMENT.** You agree to lease from Us the personal property listed above (together with all existing and future accessories, attachments, replacements and embedded software, the "Equipment") upon the terms stated herein. This Lease is binding on You as of the date You sign it. You agree that after You sign, We may insert or correct any information missing on this Lease, including Your proper legal name, serial numbers and any other information describing the Equipment, and change the Payment by up to 15% due to a change in the Equipment or its cost or a tax or payment adjustment.

2. **TERM; AUTOMATIC RENEWAL.** The term of this Lease will begin on the date that it is accepted by Us or any later date that We designate (the "Commencement Date") and will continue for the number of months shown above (the "Initial Term"). As used herein, "Term" means the term presently in effect at any time, whether it is the Initial Term or a Renewal Term (defined below). Unless You have a $1.00 Purchase Option, You shall notify Us in writing at least 30 days before the end of the Term (the "Notice Period") that You intend to purchase or return the Equipment at the end of such Term or: (a) this Lease will automatically renew for an additional one-month period (a "Renewal Term"), and (b) all terms of this Lease will continue to apply. If You do notify Us in writing within the Notice Period that You intend to purchase or return the Equipment at the end of the Term, then You shall (i) purchase the Equipment by paying the purchase option amount (and all other amounts due hereunder) within 10 days after the end of the Term, or (ii) return the Equipment pursuant to Section 12. For any "Fair Market Value" Purchase Option, the fair market value shall be determined by Us in Our sole but commercially reasonable judgment. **This Lease is non-cancelable for the full Term.**

3. **UNCONDITIONAL OBLIGATION.** You agree that: (i) We are a separate and independent company from the Supplier, manufacturer and any other vendor (collectively, "Vendors"), and the Vendors are NOT Our agents; (ii) No representation or warranty by any Vendor is binding on Us, and no Vendor has authority to waive or alter any term of this Lease; (iii) You, not We, selected the Equipment and the Vendors based on Your own judgment; (iv) Your obligations hereunder are absolute and unconditional and are not subject to cancellation, reduction or setoff for any reason whatsoever; (v) If You are a party to any maintenance, supplies or other contract with any Vendor, We are NOT a party thereto, such contract is NOT part of this Lease (even though We may, as a convenience to You and a Vendor, bill and collect monies owed by You to such Vendor), and no breach by any Vendor will excuse You from performing Your obligations to Us hereunder; and (vi) If the Equipment is unsatisfactory or if any Vendor fails to provide any service or fulfill any other obligation to You, You shall not make any claim against Us and shall continue to fully perform under this Lease.

4. **PAYMENTS.** You agree to pay Us an interim rent charge as reasonably calculated by Us for the period from the date the Equipment is delivered to You until the Commencement Date. The payment for this interim period will be based on the Payment prorated on a 30-day calendar month and will be added to Your first invoice. Each Payment Period, You agree to pay Us, by the due date set forth on Our invoice to You (i) the Payment, and (ii) applicable taxes and other charges provided for herein. Restrictive endorsements on checks will not be binding on Us. All payments received will be applied to past due amounts and to the current amount due in such order as We determine. Any security deposit that You pay is non-interest bearing, may be commingled with Our funds, may be applied by Us at any time to cure any default by You, and the unused portion will be returned to You after You have satisfied all of Your obligations hereunder. If We do not receive a payment in full on or before its due date, You shall pay a fee equal to the greater of 10% of the amount that is late or $29.00 (or the maximum amount permitted by applicable law if less). You shall pay Us a returned check or non-sufficient funds charge of $20.00 for any returned or dishonored check or draft.

5. **INDEMNIFICATION.** You shall indemnify and hold Us harmless from and against, any and all claims, actions, damages, liabilities, losses and costs (including but not limited to reasonable attorneys' fees) made against Us, or suffered or incurred by Us, arising directly or indirectly out of, or otherwise relating to, the delivery, installation, possession, ownership, use, loss of use, defect in or malfunction of the Equipment. This obligation shall survive the termination of this Lease. We shall not be liable to You for any damages of any kind, including any liability for consequential damages, arising out of the use of or the inability to use the Equipment.

6. **NO WARRANTIES. WE ARE LEASING THE EQUIPMENT TO YOU "AS IS". WE HAVE NOT MADE AND HEREBY DISCLAIM ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, ARISING BY APPLICABLE LAW OR OTHERWISE, INCLUDING WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.** The parties hereto agree that this Lease is, or shall be treated as, a "finance lease" under Article 2A of the Uniform Commercial Code (the "UCC"). You hereby waive any and all rights and remedies conferred upon You by Article 2A of the UCC. If this Lease is deemed to be a secured transaction, You hereby grant to Us a security interest in the Equipment and all proceeds thereof. You authorize Us to record UCC financing statements to protect Our interests in the Equipment. You may be entitled under Article 2A of the UCC to the promises and warranties (if any) provided to Us by the Supplier(s) in connection with or as part of the contract (if any) by which We acquire the Equipment, which warranty rights We assign to You for the Term (provided You are not in default). You acknowledge that You are aware of the name of the Supplier of each item of Equipment and You may contact the Supplier(s) for an accurate and complete statement of those promises and warranties (if any), including any disclaimers and limitations of them or of remedies.

7. **DELIVERY; LOCATION; OWNERSHIP; USE AND MAINTENANCE.** We are not responsible for delivery or installation of the Equipment. You are responsible for Equipment maintenance. You will not remove the Equipment from the Equipment Location unless You first get Our permission. You shall give Us reasonable access to the Equipment Location so that We may inspect the Equipment, and You agree to pay Our costs in connection therewith. We will own and have title to the Equipment (excluding

*BY SIGNING BELOW, CUSTOMER ACKNOWLEDGES RECEIPT OF PAGE 2 OF THIS AGREEMENT AND AGREES TO THE TERMS ON BOTH PAGES 1 & 2*

| Customer: (identified above) JIT INDUSTRIES, INC. | Wells Fargo Financial Leasing, Inc. ("We," "Us," "Our" and "Lessor") |
|---|---|
| By: [signature] Date: 9/2/2015 | By: [signature] Date: 9/3/15 |
| Print name: MATT MCCOMB  Title: COO | Print name: Xu Yang  Title: EFZC |
| Agreement Number: 2539 | |

Page 1 of 2

Case 18-80892-CRJ11    Doc 70    Filed 07/27/18    Entered 07/27/18 14:35:19    Desc Main
Document    Page 5 of 7

any software) during the Lease. If the Equipment includes any software: (i) We don't own the software, (ii) You are responsible for entering into any necessary software license agreements with the owners or licensors of such software, (iii) You shall comply with the terms of all such agreements, if any, and (iv) any default by You under any such agreements shall also constitute a default by You under this Lease. You agree that the Equipment is and shall remain personal property and without Our prior written consent, You shall not permit it to become (i) attached to real property or (ii) subject to liens or encumbrances of any kind. You represent that the Equipment will be used solely for commercial purposes and not for personal, family or household purposes. You shall use the Equipment in accordance with all laws, operation manuals, service contracts (if any) and insurance requirements, and shall not make any permanent alterations to it. At Your own cost, You shall keep the Equipment in good working order and warrantable condition, ordinary wear and tear excepted ("Good Condition").

8. **LOSS; DAMAGE; INSURANCE.** You shall, at all times during this Lease, (i) bear the risk of loss and damage to the Equipment and shall continue performing all Your obligations to Us even if it becomes damaged or suffers a loss, (ii) keep the Equipment insured against all risks of damage and loss ("Property Insurance") in an amount equal to its replacement cost, with Us named as sole "loss payee" (with a lender's loss payable endorsement if required by Lessor or an Assignee), and (iii) carry public liability insurance covering bodily injury and property damage ("Liability Insurance") in an amount acceptable to Us, with Us named as an additional insured thereunder. You have the choice of satisfying these insurance requirements by providing Us with satisfactory evidence of Property and Liability Insurance ("Insurance Proof"), within 30 days of the Commencement Date. Such Insurance Proof must provide for at least 30 days prior written notice to Us before it may be cancelled or terminated and must contain other terms satisfactory to Us. If you do not provide Us with Insurance Proof within 30 days of the Commencement Date, or if such Insurance terminates for any reason, then (a) You agree that We have the right, but not the obligation, to obtain such Property Insurance and/or Liability Insurance in such forms and amounts from an insurer of Our choosing in order to protect Our interests ("Other Insurance"), and (b) You agree that We may charge you a periodic charge for such Other Insurance. This periodic charge will include reimbursement for premiums advanced by Us to purchase Other Insurance, billing and tracking fees, charges for Our processing and related fees associated with the Other Insurance, and a finance charge of up to 18% per annum (or the maximum rate allowed by law if less) on any advances We make for premiums (collectively, the "Insurance Charge"). We and/or one or more of our affiliates and/or agents may receive a portion of the Insurance Charge, which may include a profit. We are not obligated to obtain, and may cancel, Other Insurance at any time without notice to You. Any Other Insurance need not name You as an insured or protect Your interests. The Insurance Charge may be higher than if You obtained Property and Liability Insurance on Your own.

9. **ASSIGNMENT.** You shall not sell, transfer, assign or otherwise encumber (collectively, "Transfer") this Lease, or Transfer or sublease any Equipment, in whole or in part, without Our prior written consent. We may, without notice to You, Transfer Our interests in the Equipment and/or this Lease, in whole or in part, to a third party (an "Assignee"), in which case the Assignee will, to the extent of such Transfer, have all of Our rights and benefits but will not have to perform Our obligations (if any). Any Transfer by Us will not relieve Us of Our obligations hereunder. You agree not to assert against the Assignee any claim, defense or offset You may have against Us.

10. **TAXES AND OTHER FEES.** You are responsible for all taxes (including, without limitation, sales, use and personal property taxes, excluding only taxes based on Our income), assessments, license and registration fees and other governmental charges relating to this Lease or the Equipment (collectively "Governmental Charges"). Sales or use taxes due upfront will be payable over the Initial Term, with a finance charge. You authorize Us to pay any Governmental Charges as they become due, and You agree to reimburse Us promptly upon demand for the full amount. You agree to pay Us a fee for Our administration of taxes related to the Equipment. You also agree to pay Us upon demand (i) for all costs of filing, amending and releasing UCC financing statements, and (ii) a documentation/processing fee in the amount set forth on Page 1 (or as otherwise agreed to). You also agree to pay Us a fee for additional services We may provide to You at Your request during this Lease. If You so request, and We permit the early termination of this Lease, You acknowledge that there may be a cost or charge to You for such privilege. In connection with the expiration or earlier termination of this Lease, You agree to pay Us any Governmental Charges accrued or assessed but not yet due and payable, or Our estimate of such amounts. You agree that the fees and other amounts payable under this Lease may include a profit to Us and/or the Supplier.

11. **DEFAULT; REMEDIES.** You will be in default hereunder if: (1) You fail to pay any amount due hereunder within 15 days of the due date; (2) You breach or attempt to breach any other term, representation or covenant herein or in any other agreement now existing or hereafter entered into with Us or any Assignee; (3) an event of default occurs under any obligation You may now or hereafter owe to any affiliate of Us or any Assignee; and/or (4) You and/or any guarantors or sureties of Your obligations hereunder (i) die, (ii) go out of business, (iii) commence dissolution proceedings, (iv) merge or consolidate into another entity, (v) sell all or substantially all of Your or their assets, or there is a change of control with respect to Your or their ownership, (vi) become insolvent, admit Your or their inability to pay Your or their debts, (vii) make an assignment for the benefit of Your or their creditors (or enter into a similar arrangement), (viii) file, or there is filed against You or them, a bankruptcy, reorganization or similar proceeding or a proceeding for the appointment of a receiver, trustee or liquidator, or (ix) suffer a material adverse change in Your or their financial condition. If You default, We may do any or all of the following: (A) cancel this Lease, (B) require You to promptly return the Equipment pursuant to Section 12, (C) take possession of and/or render the Equipment (including any software) unusable (and for such purposes You hereby authorize Us and Our designees to enter Your premises, with or without prior notice or other process of law), and sell, lease or otherwise dispose of the Equipment on such terms and in such manner as We may in Our sole discretion determine, (D) require You to pay to Us, on demand, liquidated damages in an amount equal to the sum of (i) all Payments and other amounts then due and past due, (ii) all remaining Payments for the remainder of the Term discounted at a rate of 6% per annum, (iii) the residual value of the Equipment estimated by Us at the inception of this Lease (as shown in Our books and records), discounted at a rate of 6% per annum, (iv) interest on the amounts specified in clauses "i", "ii" and "iii" above from the date of demand to the date paid at the rate of 1.5% per month (or the maximum amount permitted by law if less), and (v) all other amounts that may thereafter become due hereunder to the extent that We will be obligated to collect and pay such amounts to a third party (such amounts specified in sub-clauses "i" through "v" referred to below as the "Balance Due"), and/or (E) exercise any other remedy available to Us under law. You also agree to reimburse Us on demand for all reasonable expenses of enforcement (including, without limitation, reasonable attorneys' fees and other legal costs) and reasonable expenses of repossessing, holding, preparing for disposition, and disposition ("Remarketing") of the Equipment, plus interest at the rate in sub-clause (iv) on the foregoing amounts from the date of demand to the date paid. In the event We are successful in Remarketing the Equipment, We shall give You a credit against the Balance Due in an amount equal to the present value of the proceeds received and to be received from Remarketing minus the above-mentioned costs (the "Net Proceeds"). If the Net Proceeds are less than the Balance Due, You shall be liable for such deficiency. Any delay or failure to enforce Our rights hereunder shall not constitute a waiver thereof. The remedies set forth herein are cumulative and may be exercised concurrently or separately.

12. **RETURN OF EQUIPMENT.** If You are required to return the Equipment under this Lease, You shall, at Your expense, send the Equipment to any location(s) that We may designate and pay Us a handling fee of $250.00. The Equipment must be properly packed for shipment, freight prepaid and fully insured, and must be received in Good Condition (defined in Section 7). All terms of this Lease, including Your obligation to make Payments and pay all other amounts due hereunder shall continue to apply until the Equipment is received by Us in accordance with the terms of this Lease. You are solely responsible for removing all data from any digital storage device, hard drive or other electronic medium prior to returning the Equipment or otherwise removing or allowing the removal of the Equipment from Your premises for any reason (and You are solely responsible for selecting an appropriate removal standard that meets Your business needs and complies with applicable laws). We shall not be liable for any losses, directly or indirectly arising out of, or by reason of the presence and/or use of any information, images or content retained by or resident in any Equipment returned to Us or repossessed by Us.

13. **APPLICABLE LAW; VENUE; JURISDICTION; SEVERABILITY.** This Lease shall be deemed fully executed and performed in the state of Iowa and shall be governed and construed in accordance with the laws of the state of Iowa. If Lessor or its Assignee shall bring any judicial proceeding in relation to any matter arising under this Lease, You hereby irrevocably agree that any such matter may be adjudged or determined in any court or courts in the state of Iowa or the state of Lessor's or its Assignee's principal place of business, or in any other court or courts having jurisdiction over You or Your assets, all at the sole election of Lessor or its Assignee. You hereby irrevocably submit generally and unconditionally to the jurisdiction of any such court so elected by Lessor or its Assignee in relation to such matters and irrevocably waive any defense of an inconvenient forum to the maintenance of any such action or proceeding. **YOU AND WE HEREBY WAIVE YOUR AND OUR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY LEGAL ACTION.** If any amount charged or collected under this Lease is greater than the amount allowed by law (an "Excess Amount"), then (i) any Excess Amount charged but not yet paid will be waived by Us and (ii) any Excess Amount collected will be refunded to You or applied to any other amount then due hereunder. Each provision hereof shall be interpreted to the maximum extent possible to be enforceable under applicable law. If any provision is construed to be unenforceable, such provision shall be ineffective only to the extent of such unenforceability without invalidating the remainder hereof.

14. **DOLLAR PURCHASE.** This Section only applies if You have a $1.00 Purchase Option. At the end of the Initial Term, You shall purchase the Equipment "AS IS, WHERE IS" for one dollar ($1.00); provided, however, We shall not be required to transfer Our interest in the Equipment to You until You have paid to Us all amounts then owing hereunder, if any. You agree that prior to entering into this Lease, You could have purchased the Equipment from the Supplier for a specific cash amount, but instead You hereby choose and agree to pay a higher amount (the "Time Price") to Us in installments over the Initial Term. The Time Price equals the Payment amount shown above multiplied by the total number of Payments to be paid over the Initial Term, plus $1.00. You agree that the Time Price represents only a higher purchase price and does not include an interest component or finance charge. However, if the Time Price should be determined or adjudicated to include an interest component or finance charge, then you agree that (i) each Payment shall be deemed to include an amount of pre-computed interest, (ii) the total pre-computed interest scheduled to be paid over the Initial Term is to be calculated by subtracting the amount We pay the Supplier ("Our Investment") from the Time Price, (iii) the annual interest rate deemed applicable to this transaction is the rate that will amortize Our Investment down to $1.00 by applying all periodic Payments as payments (and this rate calculation method assumes that each periodic Payment is received by Us on the due date), and (iv) none of the other fees or costs We may charge You pursuant to this Lease (including but not limited to UCC filing fees, late fees, documentation or processing fees) shall be considered interest or a finance charge.

15. **MISCELLANEOUS.** You shall furnish Us or an Assignee with current financial statements upon request by Us or an Assignee. You authorize Us or an Assignee to (a) obtain credit reports or make credit inquiries in connection with this Lease, and (b) provide Your credit application, information regarding Your Lease account to credit reporting agencies, potential Assignees, Vendors and parties having an economic interest in this Lease and/or the Equipment. This Lease may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute the same document; provided, however, only the counterpart which is marked "Original" and is in Our possession shall constitute chattel paper under the UCC. You acknowledge that You have received a copy of this Lease and agree that a facsimile or other copy containing Your faxed, copied or electronically transmitted signature may be treated as an original and will be admissible as evidence of this Lease. You waive notice of receipt of a copy of this Lease with Our original signature. You hereby represent to Us that this Lease is legally binding and enforceable against You in accordance with its terms.

JIT Industries, Inc.
Case # 18-80892
File Date: 3/23/2018

| Account # | Asset | Pre-Petition Arrearage | Pmts Rmning | Payment Amount | Total Monthly Pmts | Late Charge | Total Balance for Lease Agmt *** | Serial No |
|---|---|---|---|---|---|---|---|---|
| xxx-xxxx2539 | 0 | $1,950.87 | 41.00 | $171.13 | $7,016.33 | $68.44 | $7,084.77 | 74635C6600FHP |
| xxx-xxxx2539 | 1 | $1,950.87 | 41.00 | $171.13 | $7,016.33 | $68.44 | $7,084.77 | 74635C6600FP8 |

$ 3,901.74                                   $14,169.54